UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HAROLD YATES,

    Plaintiff,

v().  Case No.: 2:20-cv-251-SPC-MRM

ENVISION GLASS & ALUMINUM,
RICHARD FRASER and BLAKE
FRASER,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

The parties filed a Joint Renewed Motion for Approval of FLSA Settlement Agreement. (Doc. 37). They request that the Court approve their revised settlement agreement (Doc. 37-1) and dismiss the action with prejudice. (*See* Doc. 37 at 1, 3).[1] This is the parties' second bid for court approval. (*See* Docs. 35-37). After the Undersigned denied their first bid without prejudice (*see* Doc. 36), the parties revised their settlement agreement to remove certain provisions the Undersigned found problematic. (*See* Doc. 37 at 2-3). The current motion incorporates by reference the arguments the parties made in their prior motion as to why the revised settlement agreement should be approved. (*See id.* at 3). After careful review of the parties' submissions and the record, the Undersigned respectfully recommends that the renewed motion (Doc. 37) be **GRANTED**.

---

[1] Pinpoint page citations for documents refer to CM/ECF pagination.

## BACKGROUND

Plaintiff filed a one-count complaint asserting that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 207, by failing to pay him overtime compensation. (*See* Doc. 1). Plaintiff alleges that "Defendants operate an aluminum and glass company that offers a variety of custom construction and installation services, including, but not limited to, countertops, shower doors, canopies, entrances, and mirrors." (*Id.* at 4). According to Plaintiff, he "worked for Defendants from approximately 2017 through 2019 as a glazier." (*Id.*). His duties throughout his employment included, among other things, "driving to Defendants' customers and installing and constructing fixtures out of glass and aluminum." (*Id.*).

Plaintiff alleges that "Defendants paid Plaintiff at an hourly rate of pay throughout the duration of his employment" and "[i]n most, if not all work weeks [sic], Plaintiff worked for Defendants in excess of forty (40) hours." (*Id.*). Plaintiff complains that "Defendants failed to compensate Plaintiff at a rate of one and one-half times Plaintiff's regular rate of pay for all of the hours that he worked in excess of forty (40) hours in a given work week [sic]." (*Id.*). Specifically, Defendants did not include all of Plaintiff's hours worked each workweek in determining the number of overtime hours Plaintiff worked." (*Id.* at 4-5). For example, Plaintiff alleges:

> Defendants compensated Plaintiff at his regular hourly rate of pay for the first forty hours that Plaintiff spent at specific job sites each work week [sic]. These were classified by Defendants as "Regular Hours" on Plaintiff's pay stubs. . . . When Plaintiff spent more than forty hours working at specific job sites during a work week [sic], Defendants considered these as overtime hours and compensated

2

> Plaintiff time and one half of his regular rate of pay. . . .
> However, Defendants compensated Plaintiff for all hours
> that he spent driving between each job each work day [sic]
> at his regular rate of pay, separate and apart from the hours
> that he spent on job sites. . . . Defendants classified these
> hours as "Drive Time Hours" on Plaintiff's paystubs. . . .
> The time that Plaintiff spent travelling between jobs each
> day should have been included in the regular hours and
> overtime hours worked each week.

(*Id.* at 5 (paragraph enumeration omitted)). Plaintiff also complains that "Defendants made deductions from Plaintiff's pay for damages to tools," which deductions "reduced the amount of overtime compensation that Plaintiff received." (*Id.* at 6). Plaintiff alleges that Defendants' conduct was willful. (*Id.* at 6-7).

Based on these allegations, Plaintiff seeks to recover unpaid minimum wages, overtime compensation, an additional and equal amount as liquidated damages, and reasonable attorney's fees and costs. (*See id.* at 1, 7).

As for his compensation, Plaintiff attests in his answers to the Court's standard FLSA interrogatories that "[f]or February 2018, my regular rate of pay was $17.00 per hour. From approximately March 2018 through June 2019, my regular rate of pay was $18.00 per hour." (Doc. 12-1 at 2). He also avers that "[he] received only straight time pay for approximately 375.7 hours of overtime work throughout the duration of [his] employment" and that "Defendants also illegally deducted approximately $904.26 from [his] paychecks for tools throughout the duration of [his] employment." (*Id.* at 3). Plaintiff estimates his total claimed damages to be $4,280.56 in back wages, plus an equal amount as liquidated damages and reasonable attorney's fees and costs. (*See id.*).

3

Defendants filed an answer, expressly denying Plaintiff's allegations and asserting several affirmative defenses. (*See* Doc. 9).

On December 9, 2021, the parties filed their first joint motion seeking court approval of their settlement. (*See* Doc. 35). The Undersigned denied that motion without prejudice based on several provisions that were facially problematic. (*See* Doc. 36). The parties then timely filed the current renewed motion on January 21, 2022 (*see* Doc. 37) and attached to it a revised Settlement Agreement (*see* Doc. 37-1). The renewed motion and the revised settlement agreement appear to address or resolve the Undersigned's concerns. Specifically, the parties explain in the renewed motion that they "amended their FLSA Settlement Agreement to remove and/or modify the provisions that the Court found problematic." (Doc. 37 at 2).

**LEGAL STANDARD**

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353. When the

4

employees sues, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit found settlements to be permissible when employees sue under the FLSA for back wages. *Id.* at 1354. The Eleventh Circuit held that a lawsuit:

> provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

## ANALYSIS

The Undersigned analyzes below the bona fide nature of the parties' dispute, the monetary terms of the proposed settlement, the non-cash concession included in the settlement, and the payment of attorney's fees and costs contemplated by the settlement. Because the parties removed the problematic provisions that prompted the Undersigned to deny the initial motion without prejudice (*see* Doc. 36; *see also* Doc. 37 at 2-3), the Undersigned does not address those provisions further.

I.  **Bona Fide Dispute**

To begin, the Undersigned finds that a bona fide dispute exists between the parties. At base, Plaintiff alleges that Defendants violated overtime requirements under the FLSA by not including his drive time in the calculation of his hours worked and by deducting from his pay amounts attributed to tool damage. (*See* Doc. 1 at 5-6; Doc. 35 at 2). Defendants deny Plaintiff's claim, assert affirmative defenses, and dispute liability. (*See* Doc. 9; *see also* Doc. 35).

There is no question that a bona fide dispute exists between the parties. As a result, the proper focus is whether the terms of the proposed settlement are fair and reasonable.

II. **The Proposed Settlement**

  A.  **Monetary Terms**

Under the revised settlement, Defendants will pay to each Plaintiff "$3,000 to compensate him for alleged unpaid overtime wages and $3,000.00 to compensate him for alleged liquidated damages." (Doc. 35 at 3). "The settlement amount represents eighty-nine percent (89%) of Plaintiff's total alleged damages." (*Id.*). If Defendants breach the settlement agreement or default on their installment payment obligations, these amounts increase to $4,278.76 for unpaid wages and $4,278.76 for liquidated damages. (*See* Doc. 37-1 at 4).

The parties account for the difference between these settlement amounts and the damages calculations in Plaintiff's answers to the Court's interrogatories (Doc.

12-1), by explaining that "[a]fter an exchange of information, Plaintiff calculated that he was paid only straight time for 375.5 hours of overtime work, which resulted in $3,374.50 in unpaid overtime, and an equal amount as liquidated damages." (Doc. 35 at 2). The parties also explain in a footnote that:

> In Plaintiff's responses to the Court's interrogatories, Plaintiff stated that he worked 375.7 hours of unpaid overtime. *See* D.E. 12-1. This was an error in calculation. Defendants' records show that Plaintiff worked 375.5 hours of unpaid overtime. Plaintiff's answers to the Court's interrogatories also refer to illegal tool deductions. However, because the Complaint did not allege unlawful conduct for potentially illegal deductions, and because Plaintiff's regular rate of pay did not fall below minimum wage in the work weeks [sic] where deductions for tools were taken, the Parties negotiated a settlement of unpaid overtime only. The total amount that Plaintiff alleged was deducted from his pay for tools equals $904.26.

(Doc. 35 n.1).

As for timing, the settlement agreement provides that Defendants will pay Plaintiff and Plaintiff's counsel in seven scheduled installments. (*See id.* at n.3; Doc. 37-1 at 2-3). The parties explain the reason for the installment payments as follows:

> Defendants expressed concerns with the ability to pay a lump sum settlement as they are currently subject to judgments, one currently in the garnishment stage. Therefore, in order to recover a majority of Plaintiff's unpaid wages, the Parties agreed that a payment plan was in the Parties' best interests. That way, Plaintiff would recover the majority of his unpaid overtime, and Defendants are less likely to default on the agreement. In order to provide the Plaintiff with assurances, Defendants agreed that in the event of default, Defendants would owe Plaintiff and Plaintiff's counsel a total of $19,000.00 ($4,278.76 in unpaid wages to Harold Yates, $4,278.76 in liquidated damages to Harold Yates, and $10,442.48 in

7

>attorney's fees and costs to Morgan and Morgan, P.A.). $3,374.50 (unpaid overtime) plus $904.26 (tool deductions) = $4,278.76.

(Doc. 35 at 3 n.3).

The Undersigned finds the parties' explanation as to how they arrived at the settlement amounts and the discrepancy between those amounts and Plaintiff's interrogatory answers to be minimally sufficient.  Plaintiff will receive around eighty-nine percent (89%) of his claimed overtime pay damages, considering no amount is being attributed to Plaintiff's tool deduction claim for the reason the parties explain. (*See id.* at 2; *see also* Doc. 12-1 at 2).  The Undersigned finds no issue in allowing Defendants to pay Plaintiff and Plaintiff's counsel under the agreed-upon installment schedule based on (1) the apparent risk that Defendants may be unable to satisfy a lump-sum obligation and Plaintiff may receive nothing if Defendants default and (2) the added protection in the settlement agreement that if Defendants fail to pay as agreed, Defendants will owe a greater amount to Plaintiff and Plaintiff's counsel. (*See id.*; Doc. 37-1 at 4).  In sum, the settlement agreement provides Plaintiff with substantial compensation in compromise of his FLSA claim while also mitigating the risk of recovering nothing.

Based on all of this information, the Undersigned finds the monetary terms of the settlement to be fair and reasonable.  In this regard, the Undersigned places significant weight on:  (1) the fact that Plaintiff is represented by experienced counsel who has reviewed and considered the available evidence and advised Plaintiff of the

risks of losing on the merits of the action and of a default by Defendants; and (2) the lack of any indicia of fraud or collusion.

### B. Non-Cash Concessions

The settlement agreement contains only one non-cash concession—*i.e.*, language constituting Plaintiff's release of claims against Defendants under the FLSA. (*See* Doc. 37-1 at 5).

Although general releases in FLSA settlement agreements are problematic, *see Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2440542, at *3 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, 2018 WL 2451845 (M.D. Fla. May 31, 2018), this specific provision is narrowly tailored to release only FLSA claims against Defendants. In light of its limited nature, any concern about broad or general releases does not exist and the settlement may be approved as fair and reasonable. *See Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 8669879, at *4 (M.D. Fla. Sept. 23, 2016), *report and recommendation adopted*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 5746376 (M.D. Fla. Oct. 4, 2016) (approving a release that is limited to claims arising under the FLSA).

Thus, this non-cash concession does not preclude approving the parties' settlement.

### C. Attorney's Fees and Costs

The revised settlement agreement provides that Defendants will pay Plaintiff's counsel $6,000.00 for attorney's fees and costs. (*See* Doc. 35 at 3; Doc. 37-1 at 2-3).

9

If Defendants breach the settlement agreement or default on their installment payment obligations, this amount increases to $10,442.48. (*See* Doc. 37-1 at 4).

In their first motion, the parties state that they "negotiated the amount that Defendants will pay Plaintiff for his attorney's fees and costs separately from the amounts Defendants will pay him for alleged unpaid wages and liquidated damages." (Doc. 35 at 3). The also state that "Plaintiff's counsel expended 43.3 hours (not including the drafting of this motion) in litigating this matter and incurred $1,856.63 in costs. Plaintiff's counsel's hourly rate is $275.00 in this jurisdiction. Therefore, Plaintiff's counsel is earning less in attorney's fees than she is entitled to." (Doc. 35 at 4).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching [the] same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely

10

> affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

## CONCLUSION

For these reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The Joint Renewed Motion for Approval of FLSA Settlement Agreement (Doc. 37) be **GRANTED**;

2. The revised Settlement Agreement (Doc. 37-1) be approved as a fair and reasonable resolution of a bona fide dispute regarding Plaintiff's FLSA claims; and

3. The Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on January 24, 2022.

Mac R. McCoy
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  A party wishing to respond to an objection may do so in writing fourteen days from the date the party is served a copy of the objection.  The parties are warned that the Court will not extend these deadlines.  **To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.**

Copies furnished to:

Counsel of Record
Unrepresented Parties